HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SANDRA L. JURSS and GARY R. JURSS, A Married Couple,<br><br>Plaintiff,<br><br>v.<br><br>SEARS, ROEBUCK & COMPANY, Incorporated, A For-Profit Corporation,<br><br>Defendants. | No. CV 06-5251 RBL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court on Defendant's Motion for Summary Judgment [Dkt. #10]. Defendant Sears, Roebuck & Company seeks a ruling as a matter of law that Plaintiff Sandra L. Jurss's claims must be dismissed because they are not supported by sufficient evidence. For the reasons explained below, the Court GRANTS this motion.

**BACKGROUND**

Ms. Jurss was formerly employed on an at-will basis as the Store General Manger (SGM) for Sears in Lacey, Washington. She appears to have worked in an array of positions at the Lacey Store: beginning in 1977 in the coffee shop; as supervisor of the women's department; as supervisor of the hardware department; as manager of the men's, kids and shoes departments; and as Store Operations Manager (SOM). She worked at Sears's headquarters in Illinois, beginning in 1998, until she returned to the Lacey Store as SGM beginning June 1, 2004. Ms. Jurss was 50 years old when she was terminated on June 7,

ORDER
Page - 1

2005; she was replaced by Chris Godfrey, a man in his early to mid-30s. Ms. Jurss contends that she was discriminated against because of her age and gender per RCW 49.60.180(2) and wrongfully discharged in violation of Washington's public policy.

Sears argues that Ms. Jurss's claims should be dismissed for several reasons. First, Sears argues that Plaintiff's Opposition to the Motion for Summary Judgment [Dkt. #12] was not timely filed and should, accordingly, be disregarded.[1] Second, Sears argues that Ms. Jurss's discrimination claim should be dismissed because Sears had legitimate, non-discriminatory reasons for terminating her and she failed to provide sufficient evidence to support her claim. Third, Sears argues that Ms. Jurss's wrongful discharge in violation of public policy claim should be dismissed because she failed to specify the policy allegedly violated by Sears and she failed to provide sufficient evidence to support her claim.

## DISCUSSION

A.   Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the moving party has satisfied their burden, the moving party is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a decision in their favor. *Triton Energy*, 68 F.3d at 1220.

Courts must act with caution in granting summary judgment because although summary judgment serves as a useful procedural tool to speed the determination of disputes in which no questions of material

---

[1] The Court has considered Plaintiff's Opposition to the Motion for Summary Judgment [Dkt. #12] despite its untimely filing.

ORDER
Page - 2

fact exist, an erroneous grant of summary judgment may deny a party the only opportunity to prove their case at trial. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146-47, 219 USPQ 13 (Fed.Cir. 1983). Likewise, an "improvident denial" of summary judgment may force the parties and the court to bear the expense of an unnecessary trial. *Id.*

      B.      Discrimination Claim

Ms. Jurss asserts that Sears terminated her employment because she is part of a protected class. Washington law prohibits termination based upon an employee's age, sex, marital status, race, creed, color, national origin, or the presence of sensory, mental, or physical handicap.[2] *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 226, 685 P.2d 1081 (1984); RCW 49.44.090, 49.60.180(2).

To establish an age discrimination claim, Ms. Jurss must show that at the time of her termination she was (1) a member of a protected class (i.e., persons over 40 years in age); (2) replaced by someone outside that protected class (i.e., a younger individual); and (3) performing her job satisfactorily. *Kuyper v. State*, 79 Wn. App. 732, 735, 904 P.2d 793 (1995), *rev. den.*, 129 Wn.2d 1011, 917 P.2d 130 (1996). To establish a gender discrimination claim, Ms. Jurss must show that at the time of her termination she was (1) a member of a protected class (i.e., women); (2) replaced by someone outside that protected class (i.e., a man); and (3) performing her job satisfactorily. *Kuest v. Regent Assisted Living, Inc.*, 111 Wn. App. 36, 43-44, 43 P.3d 23 (2002), *rev. den.*, 149 Wn.2d 1023, 72 P.3d 762 (Table) (2003). Unless a prima facie case of discrimination is set forth, the defendant is entitled to prompt judgment as a matter of law. *Kastanis v. Educ. Employees Credit Union*, 122 Wn.2d 483, 490, 859 P.2d 26, 865 P.2d 507 (1993) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

As a woman 50 years of age replaced by a younger, male employee, Ms. Jurss must prove that she performed her job satisfactorily in order to meet the burden of the prima facie case for discrimination. An employee's assertion of satisfactory performance to contradict the employer's assertion of poor performance does not give rise to a reasonable inference of discrimination. *Chen v. State*, 86 Wn. App.

---

[2] Ms. Jurss asserts only state law claims. The case was removed to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. Although Washington law is in accord with federal anti-discrimination law, the Court restricts the scope of its analysis to the substantive state law of Washington.

183, 191, 937 P.2d 612 (1997), *rev. den.* 133 Wn.2d 1020, 948 P.2d 387 (Table) (1997) (citing *Parsons v. St. Joseph's Hosp.*, 70 Wn. App. 804, 811, 856 P.2d 702 (1993)). Ms. Jurss has provided no evidence that her performance was satisfactory beyond that of her own assertions.

Assuming that Ms. Jurss's bare allegations establish a prima facie case, the burden shifts to Sears, who must produce evidence of a legitimate, non-discriminatory basis for termination. *Kuyper*, 79 Wn. App. at 736 (citing *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 364, 753 P.2d 517 (1988)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Defendant argues that Sears had legitimate reasons for terminating Jurss and denies any discriminatory purpose.

Sears provided evidence of Ms. Jurss's poor work performance in the Documentation of Performance Issues' Performance Plan for Improvement (PPI) form prepared by Ms. Jurss's supervisor (District General Manager or Director of Stores), Gus Barakat, in February, 2005. Ex. 1 to Collings-Tift Decl. [Dkt. #11] at Ex. 3 to Jurss. Tr.[3] The instructions heading the form state that it was "to be used to record all details of a session in which an associate is informed that a change in performance or work behavior is necessary." *Id.* The form indicates Ms. Jurss's name, her position as SGM and states that there "are significant leadership deficiencies within the store, which are resulting in [an] adverse impact on [c]ustomer service, [a]ssociate productivity, [s]tore profit maximization and [g]eneral operational [d]isciplines," and that Ms. Jurss was "not meeting expectations in her store due to ineffective behaviors." *Id.* In the box of the form entitled "Consequences if associate fails to improve performance," Mr. Barakat wrote: "Must show measurable, sustained, behavior changes which are illustrated by both store results and demonstrable [l]eadership skills. Failure on the part of Sandra to improve her behavior and leadership skills will result in progressive discipline, up to and *including termination.*" *Id.* (emphasis added).

Mr. Barakat directed Ms. Jurss to create an Action Plan that would address his performance concerns. The Action Plan that she then prepared agreed to a number of positive results by March 26, 2005. Ex. 4 to Jurss Tr. However, the evidence provided by Sears shows that Ms. Jurss did not meet those results. In the "Final Written Follow-up" to the original PPI, dated March 24, 2005, Mr. Barakat

---

[3]Successive citations to the deposition transcript of Ms. Jurss are from Exhibit 1 to the Collings-Tift Declaration [Dkt. #11] unless noted otherwise.

ORDER
Page - 4

wrote:

> During this follow-up conversation I started by empirically indicating to Sandie that there was "absolutely" no progress made in any of the performance entities outlined in the original PPI . . . . I made another attempt to explain the relationship between the success of the store in these controllable measures and the leadership of the store. I was very clear in indicating to Sandie that the store failure in achieving the desired goals is directly linked to her leadership skills and management style strength and effectiveness.

Ex. 8 to Jurss Tr. The form indicated that "[i]n as much as the store's performance is not up to standards, Sandie's management of the associates's talent has been lacking and ineffective at best." *Id.* In the box of the form entitled "Statement of Expectations and Associate Action Plan for Improvement" Mr. Barakat wrote:

> I am questioning Sandie's ability to lead the store in the right direction. Since the start of her assignment on June 1st, 2004, there has not been any significantly positive change in the operation of the store that could lead me to believe that future improvement through Sandie's management is possible.

*Id.* The form also echoes the PPI's warning that "[f]ailure on the part of Sandra to improve her behavior and leadership skills will result in progressive discipline, up to and *including termination*." *Id.* (emphasis added).

When Audrey Larsh replaced Mr. Barakat as Ms. Jurss's supervisor in April, 2005, Sears provided Ms. Jurss additional time (until June 1, 2005) to attain the positive results outlined in the Action Plan. On May 27, 2005, Ms. Larsh wrote a memo citing 13 company policy violations that she witnessed on her visit to the store on May 25. Ex. 10 to Jurss Tr. ("In general the team was not working as if they were an organized team"). The number and extent of the violations is surprising considering that Ms. Jurss had already worked just shy of one year as SGM and had 27 years of experience as an employee of Sears. In addition to these violations, Ms. Jurss received a complaint from another Sears manager that she was not effectively managing her employees. Ex. 6 to Jurss Tr. ("My concern is that the SGM has not owned the situation allowing the HR manager to take control"). She was also investigated and issued a disciplinary warning for improper use of a gift card. Ex. 7 to Jurss Tr. ("[S]uch behaviors should not have been exhibited by a store manager" . . . "[t]his document is to serve as [a] warning which shall be final and will cause a termination of her employment with Sears if such violations are to occur anytime in the future").

Finally, Ms. Larsh prepared her own Final Written Follow-up for the termination of Ms. Jurss on June 6, 2005. Ex. 11 to Jurss Tr. The form indicates that Ms. Jurss failed to meet the requirements

provided in the PPI and her Action Plan within the additional six weeks afforded to her. *Id.*  Ms. Larsh wrote the following in explanation for Ms. Jurss's termination:

> Sandra's store is not adhering to Sears' policies and neither Sandra nor her staff demonstrate a solid working knowledge of various policies, practices and procedures essential to store management . . . .  Sandra has not demonstrated effective performance management inasmuch as the store is not achieving acceptable results and associates and managers are not being coached effectively nor are [they] being held accountable . . . . Sandra has not developed a high functioning team capable of adhering to company policy and/or achieving metrics . . . .  Sandra has not attained acceptable results in her store. Sandra does not convey a sense of urgency, nor does she allocate her time appropriately to drive productivity and profitable revenue growth[,] to educate and develop her team's skills, nor to remove barriers for her team to meet goals.

*Id.*  Both Ms. Jurss and Ms. Larsh signed and dated the form on June 6, 2005. *Id.*  The Court concludes that the evidence provided by Sears sufficiently meets their burden of showing a legitimate, non-discriminatory basis for their decision to terminate Ms. Jurss.

Once the defendant meets it's burden of showing a legitimate, non-discriminatory basis for their decision to terminate an employee, the burden shifts back to the employee to establish that the reason given is merely a pretext for intentional discrimination. *Kuyper*, 79 Wn. App. at 736 (citing *Grimwood*, 110 Wn.2d at 355).

Ms. Jurss argues that Sears's motion should be denied because (1) the actual performance of the Lacey Store was vastly improved during her tenure as SGM; (2) she was not provided with the training, assistance and support she had been promised by her superiors; and (3) Sears violated their own, internal policy by terminating her employment without the signature of the Regional Vice President or the President of Human Resources on her Documentation of Performance Issues' termination notice form.  As evidence to support her claim, Ms. Jurss attached excerpts from the deposition testimony of her supervisor, Audrey Larsh (Ex. A), a blank PPI document (Ex. B), excerpts from her affidavit (Ex. C), and excerpts from her own deposition testimony (Ex. D).  Pl.'s Resp. to Def.'s Mot. for Summ. J.

Ms. Jurss has provided no evidence to prove that she met the minimum requirements for satisfactory job performance at the Lacey Store, let alone evidence showing vast improvement over the course of her tenure.  Indeed, Ms. Jurss's own testimony indicated that her job performance was sub-standard:

> Q. Was your performance as store manager satisfactory or exemplary in February of 2005?

ORDER
Page - 6

>       A. On all elements, no.
>       Q. Was your performance as store manager satisfactory or exemplary in March of 2005?
>       A. In all elements, no.
>       Q. Was your performance as store manager in April satisfactory or exemplary?
>       A. In all elements, no.
>       Q. Was your performance as store manager in May satisfactory or exemplary?
>       A. In all elements, no.
>       . . . .
>       Q. So, if you're looking at the total picture, your scores did not improve?
>       A. Total picture, no.

Jurss Tr. 64:9-21, 85:12-14. Although Ms. Jurss notes in her testimony that in February of 2005, certain elements of the store were "doing very well,"[4] it is clear from the evidence provided that, overall, Ms. Jurss failed to meet the minimum requirements. Aff. of Sandra Jurss in Opp. to Mot. for Summ. J [Dkt. #14]. at 4-5. Considering the dearth of evidence provided by Ms. Jurss in contrast to the evidence provided by Sears and Ms. Jurss's own testimony, the Court must conclude that Ms. Jurss did not perform her job satisfactorily.

Ms. Jurss has provided no evidence (direct, circumstantial or otherwise) that Sears's reasons for terminating her employment was a pretext for discrimination. An employee cannot create a pretext issue without *some* evidence that the employer's reasons for termination are unworthy of belief. *Kuyper*, 79 Wn. App. at 738. (emphasis added). Ms. Jurss's own testimony is that she in unaware of anyone who was treated better than she:

>       Q. Do you contend that male employees were treated more favorably than you?
>       A. I never said that.
>       Q. Do you contend that younger employees were treated more favorably than you?
>       A. I never said that.
>       Q. Is there a person who you can compare your performance versus their performance
>       and say, that person was treated more leniently than I was?
>       A. Not that comes to mind.
>       . . . .
>       Q. Do you think that there were decisions made in regard to your employment that were
>       made because of your age?
>       A. I wouldn't know.
>       . . . .
>       Q. Can you think of any conduct that was directed to you by Mr. Barakat because you are
>       a woman?
>       A. His persona is very intimidating. There is nothing specific that I can tell you about.

Jurss Tr. 126:8-17, 138:5-9, 136:8-12. Considering this testimony and the fact that Ms. Jurss has made no attempt to show that her termination was a pretext for discrimination, the Court must conclude that Sears

---

[4]"Doing very well" appears to signify nearly meeting the minimum requirements.

ORDER
Page - 7

had a legitimate, non-discriminatory basis for terminating Ms. Jurss.

The Court has been provided with sufficient evidence that Ms. Jurss received insufficient training, assistance and support. Ms. Jurss alleges that Mr. Barakat's predecessor, Mike Squires, "promised to provide assistance and guidance and support to deal with the areas of the store that were not performing to goal or that needed improvement. Mr. Squires left Sears two months after I became SGM. Consequently, he did not assist me or provide the support he said I would have." Aff. of Sandra Jurss in Opp. to Mot. for Summ. J. [Dkt. #14] at 3. Ms. Jurss appears to be arguing that her reliance upon Mr. Squires's promises of support formed an implied contract which changed the terminable-at-will relationship between the parties, and, by failing that promise, Sears was barred from discharging Jurss without cause. Under this theory, it is necessary that employees justifiably rely on the employer's expressed policies in order to change the terminable-at-will relationship. *Thompson*, 102 Wn.2d at 233; *see also Hibbert v. Centennial Villas, Inc.*, 56 Wn.App. 889, 892, 786 P.2d 309 (1990) (holding that when an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship). However, Ms. Jurss did not raise such an argument, nor did she provide any evidence in support of such an argument. Sears, however, has provided evidence that support had, in fact, been provided. In the "Final Written Follow-up" written by Mr. Barakat, the box of the form entitled "Statement of Expectations and Associate Action Plan for Improvement" states:

> The district staff have intensified their visit schedule to the Lacey store during the past 45 days in an effort to help the Lacey team achieve minimum acceptable results. There has [sic] been three visits by each the DOM, Laura Hahn and the DISM, Tammy Olson. The results and follow through from these visits have not been effective and have not produced the desired results. It is clear to me that the store's follow-up and management of said action plans is to blame for the lack of eventual results.

Ex. 8 to Jurss Tr. Although Ms. Jurss has argued that this support was insufficient, she has provided no evidence to allow the court to determine the quality or quantity of support that would be sufficient. The only evidence provided by Ms. Jurss that she received insufficient support is the fact that she failed to meet the positive results outlined in her Action Plan. Such reasoning appears to be circular in nature and of little help. Considering that Ms. Jurss has furnished no evidence to contradict the evidence provided by Sears,

the Court therefore must conclude that Ms. Jurss received sufficient training, assistance and support to perform her job satisfactorily.

The Court is also not persuaded that the lack of a signature of the Regional Vice President or the President of Human Resources on Ms. Jurss's Documentation of Performance Issues' termination notice form has any bearing on whether her work performance was satisfactory. The Court notes the disclaimer on this form which states:

> Sears, Roebuck and Co. reserves the right to deviate from the Documentation of Performance Issues process at any time without notice at its sole discretion. No employment rights are conferred upon the associate by this Documentation of Performance Issues, and this document does not affect or alter the associate's at will employment status.

Ex. 11 to Jurss Tr. Additionally, although the deposition testimony of Audrey Larsh provided by Ms. Jurss does indicate that such signatures are generally required for the termination of Sears employees with more than fifteen years experience, consideration of this issue does not affect the outcome of the suit and is therefore irrelevant to the consideration of Sear's motion for summary judgment. *Anderson*, 477 U.S. at 248.

The Court does not assume that Ms. Jurss did not improve the performance of the Sears Store during her tenure; however, Ms. Jurss has failed to provide any evidence that could lead a trier of fact to reasonably conclude that she achieved the level of satisfactory performance required or that Sears's reasons for terminating her were pretexts for discrimination. The Court must therefore GRANT Sears's summary judgment motion on the discrimination claim.

C.  Wrongful Discharge in Violation of Washington Public Policy

Ms. Jurss argues that she was discharged in violation of Washington's public policy. In Washington, an employer has the right to discharge an employee, with or without cause, in the absence of a contract for a specified period of time. *Roberts v. Atlantic Richfield Co.*, 88 Wn.2d 887, 891, 568 P.2d 274 (1977) (citing *Webster v. Schauble*, 65 Wn.2d 849, 852, 400 P.2d 292 (1965)). However, this Court recognizes a cause of action in tort for wrongful discharge if the discharge of the employee contravenes a clear mandate of public policy. *Thompson*, 102 Wn.2d at 232. To state a cause of action, the employee bears the burden to plead and prove that a stated public policy, either legislatively or judicially recognized, may have been impugned by an employer. *Id.* The burden rests on the plaintiff in order to allow trial

courts to weed out frivolous lawsuits and cases that do not involve any public policy principle and to allow employers to make personnel decisions without fear of incurring civil liability. *Id.* If the employee meets this burden, the burden then shifts to the employer to prove that the dismissal was for reasons other than those alleged by the employee, thus protecting the employee's job security against employer actions that contravene a clear public policy. *Id.* at 232-33. In the present case, counsel for plaintiff only goes so far as to state that Sears "discharged Plaintiff from her position . . . in violation of *the* public policy of the State of Washington." Compl. for Damages, 3 at 5.3 (emphasis added). Ms. Jurss has not identified which, if any, Washington public policy was violated by her termination. This bare allegation, without more, fails to meet the burden for a prima facie case. There must be evidence to support an inference of intent to discharge for a reason that violates public policy. *Hibbert*, 56 Wn. App. at 892. Ms. Jurss has provided no evidence to support her claim and did not address defendant's motion to dismiss such claim in her untimely response. She has failed to provide any evidence that could lead a trier of fact to reasonably conclude that she was discharged in violation of Washington's public policy. The Court must therefore GRANT defendant's summary judgment motion on this claim.

* * *

The Defendant's Motion for Summary Judgment [Dkt. #10] is GRANTED.

IT IS SO ORDERED.

DATED this 30th day of May, 2007.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE